Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:   516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATALIA TKATCH, on behalf of herself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEOS THERAPEUTICS, INC., ALAN HELLER, BRYANT FONG, GERALD MCLAUGHLIN, JAMES ROBINSON, GREG ROBITAILLE, JOHN SCHMID, LINDA M. SZYPER, AYTU BIOSCIENCE, INC., and NEUTRON ACQUISITION SUB, INC.<br><br>Defendants. | Case No.:<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br>(3) Breach of Fiduciary Duties<br>(4) Aiding and Abetting Breach of Fiduciary Duties<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Natalia Tkatch ("Plaintiff"), by her attorneys, on behalf of herself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.    Plaintiff brings this stockholder class action on behalf of herself and all other public stockholders of Neos Therapeutics, Inc. ("Neos" or the "Company"), against Neos, the Company's Board of Directors (the "Board" or the "Individual Defendants,"), Neutron Acquisition Sub, Inc. ("Merger Sub"), and Aytu Bioscience, Inc. ("Aytu" and collectively with Neos, Merger Sub, and Individual Defendants, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to Aytu as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on an all stock proposed transaction valued at approximately $44.9 million (the "Proposed Transaction").

2.    The terms of the Proposed Transaction were memorialized in a December 10, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Neos will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the Aytu.  Neos public stockholders will receive, in exchange for each share of Neos common stock they own, 0.1088 shares of Aytu. This implies a per share value of $0.74 for Neos based on Aytu's closing price on December 9, 2020 of $6.84 per share. The transaction will result in NEOS stockholders owning only approximately 30% of the fully diluted common shares of Aytu.

3.    Thereafter, on January 27, 2021, Aytu filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.    The dubious nature of the Proposed Transaction is laid bare considering the existence of sharp price fluctuations of Aytu common stock since the announcement of the deal. Here, the Merger Consideration is comprised entirely of Aytu common stock exchanged at a *fixed*

2

exchange ratio of 0. 1088 which means that Neos stockholders will receive 0. 1088 shares of Aytu common stock as a portion of the Merger Consideration in exchange for each of their Neos shares, regardless of Aytu's stock price at the close of the transaction.  Thus, the consideration payable to Neos' stockholders is not insulated from fluctuations in Aytu's stock price, and stockholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.  The fact that the Proposed Transaction does not guarantee Neos' public stockholders protection from fluctuations in Aytu's price share price seems to be of no concern to the Defendants.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Neos without first taking steps to ensure that Plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or the Aytu without regard for Neos' public stockholders.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Neos stockholders.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Registration Statement on January 27, 2021

with the SEC in an effort to solicit stockholders to vote their Neos shares in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Neos stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Neos and Aytu, provided by Neos and Aytu to the Company's financial advisor, MTS Securities, LLC ("MTS") and to Aytu's financial advisor Cowen and Company, LLC ("Cowen"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by MTS and Cowen and provided to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## PARTIES

9.      Plaintiff is a citizen of Washington and, at all times relevant hereto, has been a Neos stockholder.

10.      Defendant Neos, a pharmaceutical company, develops, manufactures, and commercializes products for the treatment of attention deficit hyperactivity disorder (ADHD) using its drug delivery technology platform. Neos is organized under the laws of Delaware and has its principal place of business at 2940 N. Hwy 360, Grand Prairie, TX 75050. Shares of Neos common stock are traded on the NASDAQ under the symbol "NEOS."

11.    Defendant Alan Heller ("Heller") has been a Director of the Company at all relevant times.  In addition, Heller serves as the Chairman of the Company Board.

12.    Defendant Bryant Fong ("Fong") has been a director of the Company at all relevant times.

13.    Defendant Gerald McLaughlin ("McLaughlin") has been a director of the Company at all relevant times. In addition, McLaughlin serves as the Company's Chief Executive Officer ("CEO") and President.

14.    Defendant James Robinson ("Robinson") has been a director of the Company at all relevant times.

15.    Defendant Greg Robitaille ("Robitaille") has been a director of the Company at all relevant times.

16.    Defendant John Schmid ("Schmid") has been a director of the Company at all relevant times.

17.    Defendant Linda M. Szyper ("Szyper") has been a director of the Company at all relevant times.

18.    Defendants identified in ¶¶ 11 - 17 are collectively referred to as the "Individual Defendants."

19.    Defendant Aytu a specialty pharmaceutical company, focuses on developing and commercializing novel products in the field of hypogonadism (low testosterone), cough and upper respiratory symptoms, insomnia, and male infertility in the United States and internationally. Shares of Aytu common stock are traded on the Nasdaq under the symbol "AYTU."

20.    Defendant Merger Sub is a Delaware corporation and wholly owned subsidiary of Aytu created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District and Neos stock is traded on the NASDAQ which is located in this District.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Neos common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

25.     This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of November 2, 2020, there were 49,756,656 shares of Neos common stock issued and outstanding, likely owned by hundreds if not thousands of non-affiliated Neos public stockholders;

b.    There are questions of law and fact which are common to the Class, including *inter alia*, the following:

    i.    Whether Defendants have violated the federal securities laws;

    ii.    Whether Defendants made material misrepresentations and/or omitted material facts in the Registration Statement;

    iii.    Whether Defendants have breached their fiduciary duties; and

    iv.    Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.      Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

26.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

27.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Neos and owe the Company the duties of due care, loyalty, and good faith.

28.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.      act with the requisite diligence and due care that is reasonable under the circumstances;

b.      act in the best interest of the company;

c.      use reasonable means to obtain material information relating to a given action or decision;

d.      refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.    avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.    disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company

29.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Neos, are obligated to refrain from:

a.    participating in any transaction where the directors' or officers' loyalties are divided;

b.    participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders

30.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Neos, Plaintiff and the other public stockholders of Neos, including their duties of loyalty, good faith, and due care

31.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Neos common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

32.     Neos develops, manufactures, and commercializes products for the treatment of attention deficit hyperactivity disorder (ADHD) using its drug delivery technology platform. Its products are extended-release (XR) medications in orally disintegrating tablets or liquid suspension dosage forms. The Company manufactures and markets Adzenys XR-ODT amphetamine for the treatment of ADHD; Cotempla XR-ODT methylphenidate to treat ADHD; Adzenys ER amphetamine for the treatment of ADHD; and generic Tussionex, a hydrocodone and chlorpheniramine polistirex XR oral suspension for cough and upper respiratory symptoms of a cold. Neos also offers NT0502, a clinical-stage product candidate that has completed Phase I pilot pharmacokinetic trial for the treatment of neurological conditions associated with excessive salivation and drooling to reduce chronic sialorrhea in patients.

33.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a November 9, 2020 press release announcing its 2020 Q3 operational and financial results, the Company highlighted sequential growth for the Company's ADHD prescriptions for the quarter.

34.     Specifically, in the press release, "Neos brands outperformed the overall market, with Adzenys XR-ODT growing by 9.9% and Cotempla XR-ODT growing by 6.5%... Neos commercial ADHD prescriptions filled through the Neos RxConnect pharmacy network grew sequentially by 17.7% and made up more than 40% of total Neos prescriptions filled… Adult prescriptions for Adzenys XR-ODT grew sequentially by 10.7%."

35.     Speaking on these positive results, Neos President and CEO, Defendant McLaughlin stated, "During the third quarter, we saw Neos ADHD prescription volumes and the overall ADHD market begin to rebound from the profound impact of the COVID-19 pandemic in the second quarter of 2020, with continued prescription volume strength for the adult segment and a gradual recovery of the pediatric segment. We are pleased with the market rebound, and I am happy to report that, compared to the second quarter, third quarter prescription growth for Neos' ADHD medications was nearly double the overall ADHD market." "In addition, we are seeing continued sequential growth of Neos commercial ADHD prescriptions being filled through Neos RxConnect, our best in class patient support program."

36.     In addition to the Company's positive outlook financially, analysts have had lofty projections for the future of the Company. According to CNN Business, the 2 analysts offering 12-month price forecasts for Neos have a median target of $9.00, with a high estimate of $10.00 and a low estimate of $8.00." The consideration offered in the Proposed Transaction equates to $0.74 per share, based on Aytu's December 9, 2020 closing price, more than $7.00 lower than the lowest analyst estimate for the Company's stock. Ultimately, there is no premium paid to Neos stockholders from the consideration offered in the Proposed Transaction.

37.     Since that time, Aytu's per share price has fluctuated significantly and has recently traded as low as $5.89 per share, which would translate into a merger consideration of only approximately $0.64 per share.  The fact that the Proposed Transaction does not guarantee Neos' public stockholders protection from such fluctuations in Aytu's per share price seems to be of no concern to the Defendants.

38.     Despite this upward trajectory and financial promise, the Individual Defendants have caused Neos to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

39.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants.

40.     First, while the Registration Statement indicates that a Transaction Committee, was created to run the sales process, it does not indicate if the Transaction Committee's approval was required before the full Board would vote on any potential strategic alternative.

41.     Next the Registration Statement is also unclear as to the specific nature of all non-disclosure agreements entered into by the Company as part of the sales process, including with Aytu, the specific terms of all standstill restrictions contained in each agreement, including all specific conditions, if any, under which such provisions would fall away, and all specific differences between the entered into confidentiality agreements and the reasoning as to why they differed from one another.

42.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

43.     On December 10, 2020, Neos and Aytu issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> ENGLEWOOD, Colo. and GRAND PRAIRIE, Texas, Dec. 10, 2020 (GLOBE NEWSWIRE) -- Aytu BioScience, Inc. (NASDAQ: AYTU), a specialty pharmaceutical company focused on commercializing novel products that address significant patient needs, and Neos Therapeutics, Inc. (NASDAQ: NEOS), a commercial-stage pharmaceutical company developing and manufacturing central nervous system-focused products, today announced that they have entered into a definitive merger agreement pursuant to which Neos will merge with a wholly owned subsidiary of Aytu in an all-stock transaction.

**Transaction Details**

Upon the effectiveness of the merger (the "Merger"), Neos stockholders will be entitled to receive 0.1088 shares of common stock of Aytu for each share of Neos common stock held, after taking into account the one-for-ten reverse split of Aytu's common stock that was effected on December 8, 2020. The transaction will result in Neos stockholders owning approximately 30% of the fully diluted common shares of Aytu. The all-stock transaction is valued, on a fully diluted basis, at approximately $44.9 million based on the 10-day volume weighted average price of Aytu stock for the period ended December 9, 2020.

The boards of directors of both companies have approved the transaction.

**Strategic Rationale and Financial Benefits of the Transaction**

The combined entity will have an increased footprint in the prescription pediatric market, an established, growing multi-brand ADHD portfolio addressing the $8.5 billion ADHD market and significant combined revenue scale. For the 12-month period ending September 30, 2020, Neos generated $57.0 million in revenues. On a combined pro-forma basis for this same period, Aytu and Neos' aggregate net revenue is over $100 million. In addition, this Merger facilitates operational and commercial synergies that can be harnessed to accelerate the path to profitability for the combined entity, with estimated annualized cost synergies of approximately $15.0 million beginning fiscal year 2022.

"This is a truly transformative transaction, elevating the newly combined company to a $100 million revenue, leading specialty pharmaceutical company positioned for what we expect to be an accelerated path to profitability, continued revenue growth and further business diversification," said Josh Disbrow, Chief Executive Officer of Aytu BioScience. "The combination of Neos with the Aytu business further increases our footprint in an attractive pediatric medicine market, following our acquisition of the Cerecor pediatric Rx assets late last year. This transaction is an excellent strategic fit with our market expansion plans and we believe creates strong stockholder value."

Mr. Disbrow continued, "This transaction increases Aytu's addressable market, adding the large and growing ADHD market, with 75.1 million scripts written annually. Importantly, and despite the impact of COVID-19 on this market, Neos' ADHD product growth significantly outpaced the overall ADHD market in the third quarter of 2020, with Adzenys XR-ODT prescriptions growing by 9.9 percent and Cotempla XR-ODT prescriptions growing by 6.5 percent. Expanding into ADHD with Neos is the ideal embodiment of Aytu's strategy to build a portfolio of best-in-class prescription therapeutics and consumer health products competing in large markets."

Neos' Chief Executive Officer, Jerry McLaughlin, stated, "I firmly believe Aytu BioScience is the right partner to continue the exceptional work our team has done to build the ADHD franchise into what it is today and to continue the development of NT0502 for the treatment of sialorrhea. By leveraging the respective commercial infrastructure of Neos and Aytu, including complementary sales call points and our best-in-class patient support program, Neos RxConnect, we expect continued growth of the product portfolio. After a thorough evaluation of strategic alternatives, the Board of Directors of Neos believes that this merger represents the highest-potential value creation opportunity for Neos stockholders."

**Additional Information**

The combined company will be led by Josh Disbrow, Chief Executive Officer of Aytu and will be headquartered in Englewood, Colorado. The board of the combined company will consist of six members designated by Aytu and two members designated by Neos, including Neos Chief Executive Officer and Director Jerry McLaughlin and Neos Director Beth Hecht.

The Merger is currently expected to close by the second quarter of 2021, subject to certain approvals by both Aytu and Neos stockholders and the satisfaction of other customary closing conditions.

As part of the transaction, Aytu has agreed to provide Neos with access to up to $5.0 million cash for working capital needs for the period prior to the closing of the Merger. In addition, upon closing of the Merger, $15.0 million in principal of Neos' existing senior secured debt facility with affiliates of Deerfield Management will be repaid, and Deerfield has agreed to allow the remaining debt under the facility to remain outstanding with the combined company following the Merger. Indebtedness under Neos' existing ABL agreement with Encina Business Credit will also remain outstanding.

***The Inadequate Merger Consideration***

44.    Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

45.    First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements.

46.     For example, financial analysts at the firm Capital One Bank had valued the Company's stock as high as $10.00 per share as within the past year. Such a value is a ***1198.7% increase in value over the consideration contained in the Proposed Transaction***.

47.     Following the announcement of the Proposed Transaction, DallasNews released its brief on the deal saying, "more than 75 million prescriptions are written each year for ADHD drugs, and Neos posted third-quarter growth of 9.9% for Adzenys and 6.5% for Cotempla. The drugs are distributed through a network of 900 participating pharmacies... This is Aytu's third acquisition in just over a year and its biggest to date. Aytu reported fiscal 2020 revenue of $27.6 million, but saw its sales grow to $13.5 million in the first quarter of fiscal 2021."

48.     DBT News reported the combined company's objectives from the merger in its December 10, 2020 article on the Proposed Transaction, "The core objective of this merger is to accelerate the combined progress of these pharmaceuticals. Aytu will add Neos' well know multi-brand ADHD portfolio that will diversify its footprint in pediatrics. Moreover, it will also expand its market share in adjacent specialty care segments."

49.     Clearly, while the deal will be beneficial to the Aytu, as it was deliberately achieved at a discount, comes at great expense to Plaintiff and other public stockholders of the Company.

50.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for the Aytu at the expense of Neos public stockholders, which clearly indicates that Neos stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

51.     The Merger Agreement contains certain provisions that unduly benefit the Aytu by making an alternative transaction either prohibitively expensive or otherwise impossible.  Notably,

in the event of termination, the merger agreement requires Neos to pay up to $2 million to the Aytu and/or its affiliates, if the Merger Agreement is terminated under certain circumstances. Moreover, under one circumstance, Neos must pay this termination fee even if it consummates any competing Company Superior Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement. The termination fee will make the Company that much more expensive to acquire for potential purchasers. The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

52.    The Merger Agreement also contains a "No Company Solicitation" provision that restricts Neos from considering alternative acquisition proposals by, *inter alia*, constraining Neos' ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Company Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a *"Company Superior Proposal"* as defined in the Merger Agreement.

53.    Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser. Here, the Individual Defendants agreed to provide to the Aytu and/or its affiliates information in order to match any other offer, thus providing the Aytu access to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Aytu.

54.    These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

55.    In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.  In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.  Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.  The Merger Agreement contains none of these protections.  Rather, the Merger Agreement contains a *fixed* exchange ratio of 0.1088 which means that Neos stockholders will receive 0.1088 shares of Aytu common stock as a portion of the Merger Consideration in exchange for each of their Neos shares, ***regardless of*** Aytu***'s stock price at the close of the transaction***.  Thus, the consideration payable to Neos' stockholders is not insulated from fluctuations in Aytu's stock price, and stockholders are left in the precarious position of not knowing whether the consideration payable to them will decline further

56.    Of significant note, the failure of the Board to negotiate a collar to establish parameters to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders has proved extremely prejudicial to Neos stockholders.  On December 9, 2020, the last trading day before the deal was announced, Aytu closed at $6.84 per share.  Since that time, Aytu's per share price has fluctuated significantly and has recently traded as low as $5.89 per share, which would translate into a merger consideration of only approximately $0.64 per share.  The fact that the Proposed Transaction does not guarantee Neos' public stockholders

protection from such fluctuations in Aytu's per share price seems to be of no concern to the Defendants

57.    Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

58.    The breakdown of the benefits of the deal indicate that Neos insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Neos.

59.    Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for large cash pay days upon the consummation of the Proposed Transaction as follows.  Notably, while the Registration Statement provides the following information, it fails to provide an accounting for how the consideration afforded to Company insiders for their large holdings.

| Name of Beneficial Owner | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
|---|---|---|
| **5% Stockholders:** | | |
| Stonepine Capital Management, LLC, and related entities[1] | 4,858,889 | 9.8% |
| Nantahala Capital Management, LLC, and related entities[2] | 4,610,000 | 9.3% |
| Sphera Global Healthcare Management LP and related entities[3] | 3,530,731 | 7.1% |
| The Goldman Sachs Group, Inc. and related entities[4] | 2,548,749 | 5.1% |
| | | |
| **Directors and Named Executive Officers:** | | |
| Alan Heller[5] | 538,628 | 1.1% |
| Greg Robitaille[5] | 181,355 | +% |
| Bryant Fong[5] | 116,762 | +% |
| John Schmid[5] | 115,262 | +% |
| Beth Hecht[5] | 115.262 | +% |

| | | |
|---|---|---|
| James Robinson[5] | 59,407 | +% |
| Linda M. Szyper[5] | 82,163 | +% |
| Gerald McLaughlin[6] | 588,119 | 1.2% |
| Richard Eisenstadt[6] | 357,676 | +% |
| John M. Limongelli[6] | 37,500 | +% |
| | | |
| All directors and executive officers as a group (ten persons) [7] | 2,192,134 | 4.3% |

+    Represents beneficial ownership of less than 1%.

60.    Notably the Registration Statement does not provide a breakdown of the amount of Aytu stock each Neos insider is set to receive under the terms the Proposed Transaction, further obscuring the conflicts of interests from Plaintiff and other public stockholders of the Company.

61.    Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option or equity award, will be canceled and converted into the right to receive certain consideration according to the merger agreement. Notably, certain of the Directors own such equity awards that will be exchanged for the merger consideration as follows:

| Name | Number of Restricted Stock Units Held |
|---|---|
| *Executive Officers* | |
| Gerald McLaughlin | 290,000 |
| Richard Eisenstadt | 113,125 |
| John M. Limongelli | 100,000 |
| | |
| *Non-Employee Directors* | |
| Bryant Fong | 23,453 |
| Beth Hecht | 23,453 |
| Alan Heller | 23,453 |
| James Robinson | 23,453 |
| Greg Robitaille | 23,453 |
| John Schmid | 23,453 |
| Linda M. Szyper | 23,453 |

62.    Notably the Registration Statement does not provide a breakdown of the amount of Aytu stock each block of Neos RSUs represents under the Proposed Transaction, further obscuring the conflicts of interests from Plaintiff and other public unitholders of the Partnership

63.     Further, certain employment agreements with certain Neos executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Neos common stockholders.  Notably these payments will be granted to Company insiders as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites/ Benefits ($)[3] | Total ($)[4] |
|------|------|------|------|------|
| Gerald McLaughlin | 1,705,000 | 195,460 | 40,930 | 1,941,390 |
| Richard Eisenstadt | 778,583 | 76,246 | 23,356 | 878,185 |
| John Limongelli | 708,095 | 67,400 | 38,324 | 813,819 |

64.     Moreover, the Registration Statement is silent as to any post-close employment agreements Company insiders may have signed with Aytu.

65.     The Registration Statement must adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders. This information is necessary for unitholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

66.     Thus, while the Merger is not in the best interest of Neos stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

67.     On January 27, 2021, the Defendants caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation of Federal Securities Laws and their fiduciary duties, failed to provide the Partnership's unitholders with material information

and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading Up to the Proposed Transaction*

68.    Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.   Whether the Transaction Committee's approval was required to move forward on any potential strategic alternative;

b.   The specific nature of all non-disclosure agreements entered into by the Company as part of the sales process, including with Aytu, the specific terms of all standstill restrictions contained in each agreement, including all specific conditions, if any, under which such provisions would fall away, and all specific differences between the entered into confidentiality agreements and the reasoning as to why they differed from one another;

c.   The specific reasoning as to why the Board failed to properly negotiate for an included collar on the merger consideration; and

d.   To    adequately    disclose    communications    regarding    post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to

understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Neos and Aytu's Financial Projections*

69.     The Registration Statement fails to provide material information concerning financial projections provided and/or adjusted by Neos and/or Aytu management and relied upon by MTS and Cowen in their analyses.  The Registration Statement discloses management-prepared financial projections for which are insufficient and/or are materially misleading.

70.     The Registration Statement indicates that in connection with the rendering of MTS's fairness opinion, MTS reviewed "certain internal financial analyses and forecasts of Neos prepared by and provided to MTS Securities by the management of Neos relating to Neos' business (the "Neos Projections")" and "certain internal financial analyses and forecasts for Aytu prepared based on information provided by the management of Aytu and adjusted and provided by the management of Neos relating to Aytu's business (the "Aytu Projections," and together with the Neos Projections, the "Projections"), and utilized per instruction of Neos)".

71.     Similarly, the Registration Statement indicates that in connection with the rendering of Cowen's fairness opinion, Cowen reviewed, "certain internal financial analyses, financial forecasts, reports and other information concerning Neos prepared by the management of Neos and approved for Cowen's use by the management of Aytu (the "Neos Forecasts"), and "certain internal financial analyses, financial forecasts, reports and other information concerning

Aytu prepared by the management of Aytu (the "Aytu Forecasts" and, together with the Neos Forecasts, the "Forecasts")."

72.     Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Neos and Aytu management provided to the Board, MTS, and Cowen. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

73.     With respect to the "Neos Management Unadjusted Neos Projections," the Registration Statement fails to disclose material line items for the following metrics:

a.  EBIT, including the underlying metrics of earnings, interest, and taxes.

74.     With respect to the "Neos Management Risk-Adjusted Neos Projections," the Registration Statement fails to disclose material line items for the following metrics:

a.  The specific inputs and assumptions used to calculate a 15.1% probability of success for the launch of Phase I NT0502 in 2024 upon which the adjustments are based;

b.  EBIT, including the underlying metrics of earnings, interest, and taxes.

75.     With respect to the "Neos Management Risk-Adjusted Neos Projections – Calculated by MTS" the Registration Statement fails to disclose material line items for the following metrics:

a.  EBIT, including the underlying metrics of earnings, interest, and taxes; and

b.  The specific inputs and assumptions used to calculate the applied 21% tax rate.

76.     With respect to the "Neos Management Unadjusted Aytu Projections," the Registration Statement fails to disclose material line items for the following metrics:

     a.  EBIT, including the underlying metrics of earnings, interest, and taxes.

77.     With respect to the "Neos Management Adjusted Aytu Projections," the Registration Statement fails to disclose material line items for the following metrics:

     a.  EBIT, including the underlying metrics of earnings, interest, and taxes.

78.     With respect to the "Neos Management Risk-Adjusted Aytu Projections – Calculated by MTS" the Registration Statement fails to disclose material line items for the following metrics

     a.  EBIT, including the underlying metrics of earnings, interest, and taxes; and

     b.  The specific inputs and assumptions used to calculate the applied 21% tax rate.

79.     With respect to the "Pro Forma Analysis," projections the Registration Statement fails to disclose material line items for the following metrics:

     a.  The specific inputs and assumptions used to calculate a 15.1% probability of success for the launch of Phase I NT0502 in 2024 upon which the adjustments are based;

     b.  The specific inputs and assumptions used to calculate OpEx Synergies;

     c.  EBIT, including the underlying metrics of earnings, interest, and taxes;

80.     With respect to the "Pro Forma Analysis – Calculated by MTS," projections the Registration Statement fails to disclose material line items for the following metrics:

     a.  EBIT, including the underlying metrics of earnings, interest, and taxes; and

     b.  The specific inputs and assumptions used to calculate the applied 21% tax rate.

81.    With respect to the "Aytu Management Projections," the Registration Statement fails to disclose material line items for the following metrics:

        a.  EBIT, including the underlying metrics of earnings, interest, and taxes.

82.    With respect to the "Aytu Management Projections – Calculated by Cowen," the Registration Statement fails to disclose material line items for the following metrics:

        a.  EBIT, including the underlying metrics of earnings, interest, and taxes; and

        b.  The specific inputs and assumptions used to calculate the applied 26% tax rate

83.    With respect to the "Operating Cost Synergies," projections the Registration Statement fails to disclose material line items for the following metrics:

        a.  Costs to Achieve, including restructuring costs, transaction costs, and other non-recurring costs to achieve synergies per Aytu Management;

        b.  The specific inputs and assumptions used to calculate the applied 26% tax rate.

84.    The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

85.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process

86.    Without accurate projection data presented in the Registration Statement, Plaintiff and other stockholders of Neos are unable to properly evaluate the Company's true worth, Aytu's true worth, the Pro-Forma Company's projected worth, the merger consideration's true value, the accuracy of MTS and Cowen's financial analyses, or make an informed decision whether to vote

their Company stock in favor of the Proposed Transaction. As such, the Board has breached their

fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by MTS*

87.     In the Registration Statement, MTS describes its respective fairness opinion and

the various valuation analyses performed to render such opinion. However, the descriptions fail

to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the

valuations or evaluate the fairness opinions.

88.     With respect to the *Neos – Selected Precedent Transactions Analysis*, the

Registration Statement fails to disclose the following:

> a.   The value of each selected transaction; and
>
> b.   The date on which each selected transaction closed.

89.     With respect to the *Neos – Discounted Cash Flow Analysis*, the Registration

Statement fails to disclose the following:

> a.   The estimated present value of Neos' discounted cash flows;
>
> b.   Neos' terminal value;
>
> c.   The specific inputs and assumptions used to calculate the terminal exit revenue
>      multiple range of 1.0x to 2.0x;
>
> d.   The specific inputs and assumptions used to calculate the weighted average cost
>      of capital range of 15% to 19%;
>
> e.   Neos' estimated Weighted Average Cost of Capital; and
>
> f.   The implied per share value calculated based on Neos' current capitalization.

90.     With respect to the *Aytu – Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the following:

      a.  The value of each selected transaction; and

      b.  The date on which each selected transaction closed.

91.     With respect to the *Aytu – Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

      a.  The estimated present value of Aytu's discounted cash flows;

      b.  Aytu's terminal value;

      c.  The specific inputs and assumptions used to calculate the terminal exit revenue multiple range of 2.0x to 2.7x;

      d.  The specific inputs and assumptions used to calculate the weighted average cost of capital range of 9% to 13%;

      e.  Aytu's estimated Weighted Average Cost of Capital; and

      f.  Aytu's terminal revenue assumption.

92.     With respect to the *Pro Forma Combination Analysis*, the Registration Statement fails to disclose the following:

      a.  The specific inputs and assumptions used to calculate the terminal multiple range of 1.4x to 2.2x; and

      b.  The specific inputs and assumptions used to calculate the weighted average cost of capital range of 9.0% to 13.0%.

93.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

94.     Without the omitted information identified above, Neos public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Neos public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Cowen*

95.     In the Registration Statement, Cowen describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

96.     With respect to the *Selected Companies Analysis*, the Registration Statement fails to disclose the following:

a.   The specific metrics for each compared company;

b.   Neos' total debt and added cash and cash equivalents, each as of September 30, 2020;

c.   Neos' number of fully diluted shares outstanding;

d.   Aytu's total debt and added cash and cash equivalents, each as of September 30, 2020;

e.   Aytu's number of fully diluted shares outstanding

97.     With respect to the *Neos Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

    a.  The net present value of Neos' forecasted unlevered free cash flows for the calendar years ending December 31, 2021 through December 31, 2025;

    b.  The net present value of Neos' terminal value;

    c.  The specific inputs and assumptions used to calculate the terminal value revenue multiple range of 0.8x to 2.4x;

    d.  The specific inputs and assumptions used to calculate the applied discount rate range of 16.0% to 18.0%;

    e.  Neos' weighted average cost of capital;

    f.  Neos' valuation on December 31, 2020;

    g.  Neos' total debt and added cash and cash equivalents, each as of September 30, 2020;

    h.  The net present value of the unlevered free cash flows expected to result from the Expected Synergies for the calendar years ending December 31, 2021 through December 31, 2025;

    i.  The net present value of the terminal value of the Expected Synergies;

    j.  The specific inputs and assumptions used to calculate the perpetuity growth rate range of 0.0% to 1.0%;

    k.  The specific inputs and assumptions used to calculate the applied discount rate range of 16.0% to 18.0%, that was applied to the expected synergies analysis;

    l.  Aytu's weighted average cost of capital;

    m.  Aytu's valuation on December 31, 2020;

      n.  Aytu's total debt and added cash and cash equivalents, each as of September 30, 2020;

      o.  The specific inputs and assumptions used to calculate the applied discount rate range of 16.8%, that was applied to the NOL analysis;

      p.  Neos' cost of equity;

98.    With respect to the *Aytu Discounted Cash Flow Analysis*, the Registration Statement fails to disclose the following:

      a.  The net present value of Aytu's forecasted unlevered free cash flows for the calendar years ending December 31, 2021 through December 31, 2025,

      b.  The net present value of Aytu's terminal value;

      c.  The specific inputs and assumptions used to calculate the terminal value revenue multiple range of 1.0x to 2.3x;

      d.  The specific inputs and assumptions used to calculate the applied discount rate range of 13.0% to 15.0%;

      e.  Aytu's weighted average cost of capital;

      f.  Aytu's valuation on December 31, 2020;

      g.  Aytu's total debt and added cash and cash equivalents, each as of September 30, 2020;

      h.  The specific inputs and assumptions used to calculate the applied discount rate range of 13.9%, that was applied to the NOL analysis; and

      i.  Aytu's fully diluted shares outstanding.

99.    With respect to the *Neos and Aytu Research Analyst Price Targets* analysis, the Registration Statement fails to disclose the following:

    a.   The specific price targets used; and

    b.   The identity of the Wall Street analysts used.

100.    With respect to the *Neos Selected Transactions Analysis*, the Registration Statement fails to disclose the following:

    a.   The value of each selected transaction; and

    b.   The date on which each selected transaction closed

101.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

102.    Without the omitted information identified above, Neos public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Neos public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests. As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

## FIRST COUNT

## Claim for Breach of Fiduciary Duties

## (Against the Individual Defendants)

103.    Plaintiff repeats all previous allegations as if set forth in full herein.

104.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

105.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Neos.

106.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Neos by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Neos to its public stockholders.

107.     Indeed, Defendants have accepted an offer to sell Neos at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

108.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

109.     The Individual Defendants dominate and control the business and corporate affairs of Neos, and are in possession of private corporate information concerning Neos' assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Neos which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

110.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

111.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of

Neos' assets and have been and will be prevented from obtaining a fair price for their common stock.

112.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

113.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendant Neos, Aytu, and Merger Sub

114.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

115.    Defendants Neos, Aytu, and Merger Sub knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

116.    As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

117.    Plaintiff and the members of the Class have no adequate remedy at law.

### THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

118.    Plaintiff repeats all previous allegations as if set forth in full herein.

119.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

120.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

121.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

122.    The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

123.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

124.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

125.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to decide whether to vote their shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## FOURTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Individual Defendants)

126.    Plaintiff repeats all previous allegations as if set forth in full herein.

127.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Company stockholders.

128. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

129. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Neos's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

130.    The Individual Defendants acted as controlling persons of Neos within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Neos to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Neos and all of its employees.  As alleged above, Neos is a primary violator of Section 14 of the Exchange Act and SEC Rule Registration Statement.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Neos and obtain a transaction which is in the best interests of Neos and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 8, 2021                **BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*